**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

JOSEPH ALLEN BROWN,                  )
                                           )
           **Petitioner,**           )
                                           )
**v.**                                   )      **Case No. 19-CV-0014-TCK-JFJ**
                                         )
JANET DOWLING,                       )
                                         )
           **Respondent.**        )

## OPINION AND ORDER

Petitioner Joseph Brown, a state inmate appearing *pro se*,[1] seeks federal habeas relief, under 28 U.S.C. § 2254.  He claims his custody under the judgment entered against him in the District Court of Tulsa County, Case No. CF-2015-1238, is unlawful because (1) the trial court, his attorney, and the prosecutor violated several rights guaranteed to him by state and federal law by permitting a juror who was statutorily disqualified from serving on a criminal jury to serve on the jury that convicted him, (2) the trial court did not give an unrequested lesser-included-offense instruction, and (3) appellate counsel provided ineffective assistance by omitting two issues from his direct appeal.  Having considered Brown's petition for writ of habeas corpus (ECF No. 1), Respondent Janet Dowling's response in opposition to the petition (ECF No. 6), Brown's reply brief (ECF No. 14), the record of state court proceedings, and applicable law, the Court concludes that Brown is not entitled to federal habeas relief and denies the petition.

## *BACKGROUND*

On the evening of March 2, 2015, Brown fatally shot Omar Flores at Terry Jackson's

---

[1] Because Brown appears without counsel, the Court liberally construes his pleadings, but does not act as his advocate.  *James v. Wadas*, 724 F.3d 1231, 1315 (10th Cir. 2013).

apartment in Tulsa, Oklahoma.  (Tr. Trial vol. 1, 226-29, 266, ECF No. 7-1; Tr. Trial vol. 2, 352-55, 359-65, 395-99, 427-42, ECF No. 7-2.)[2]  Brown also shot Jackson and intentionally hit Jackson on the head with a glass bottle, but Jackson survived. (Tr. Trial vol. 2, 397-99, 440-42.)  Law enforcement officers arrested Brown three days after the shooting.  (Tr. Trial vol. 2, 413.)  During a videotaped interview, Brown first denied knowledge of the events that occurred at Jackson's apartment but later told detectives he shot both men.  Brown told detectives that he shot Flores because he thought Flores was "going for a knife" and he felt threatened by Flores, that he shot Jackson when he accidentally discharged his gun as he rose from his chair, and that he hit Jackson twice on the head with a glass bottle when Jackson grabbed his leg as he was leaving the apartment.[3]  (Tr. Trial vol. 2, 392-95, 413-14, 440-46; State's Ex. 45 (DVD of Brown's interview), ECF No. 8.)

In June 2015, the State of Oklahoma filed an amended information charging Brown with first-degree murder with malice aforethought (count one), and assault and battery with a dangerous weapon (count two).  (Original Record (O.R.) 27, ECF No. 7-6.)  Brown's case proceeded to a jury trial in January 2016.  (Tr. Trial vol. 1, 1, ECF No. 7-1.)

During voir dire, a prospective juror, R.D., identified himself as a "former Tulsa County Detention officer," and "a former Sapulpa Police Dispatcher and Jailer," and stated that he "currently work[s] for the Bixby Police Department as a Dispatcher and Jailer."  (Tr. Trial vol. 1, 16, 20, ECF No. 7-1.)  Based on his stated employment, R.D. was not eligible to serve as a juror

---

[2] The Court's citations to the record of state court proceedings refer to the original page number of the cited transcript or document.  The Court's citations to the petition, response, and reply brief filed in this habeas proceeding refer to the CM/ECF header pagination.

[3] Jackson, who is a double-amputee with no legs, was seated on a blanket or mat near the door when Brown tried to leave the apartment. (Tr. Trial vol. 1, 236, ECF No. 7-1; Tr. Trial vol. 2, 440-41, ECF No. 7-2.)

in a criminal action.  *See* Okla. Stat. tit. 38, § 28(D) (2011) (providing that "[j]ailers or law enforcement officers, municipal, state or federal, shall be eligible to serve [as jurors] on noncriminal actions only").  Neither the trial court, Brown's attorney, nor the prosecutor sought to remove R.D. from the jury panel for cause, and neither Brown's attorney nor the prosecutor used a peremptory challenge to remove him from the panel.  (Tr. Trial vol. 1, 40-41, 141-42, 146-48, 152-53, 167-69, 189-90, 204-10.)  R.D. thus served as a juror for Brown's criminal trial.  (Tr. Trial vol. 1, 210.)

The jury heard testimony from several witnesses, including Jackson and Brown, and viewed Brown's videotaped interview with detectives.  Jackson testified that only three people were in his apartment on the evening of the shooting:  Jackson, Flores and Brown, that he did not see Brown or Flores interacting with each other or holding weapons, and that he blacked out at some point and woke up to discover that Flores was dead.  (Tr. Trial vol. 1, 226-32, 238-48, ECF No. 7-1.)  The medical examiner testified that Flores died from a single gunshot wound to the back.  (Tr. Trial vol. 2, 359-60, 367-68, ECF No. 7-2.)  Highly summarized, Brown testified that he carried a gun for protection because he had been robbed in February 2014, that he and Jackson were both intoxicated on the evening of the shooting, and that he felt threatened because Jackson turned up the volume on the stereo, Flores walked toward the kitchen with "a funny look in his eye," and Flores "grab[bed] a knife" from the kitchen counter.  (Tr. Trial vol. 2, 428-37.)  In response to the perceived threat from Flores, Brown moved his gun from his waistband to his lap, then, while still holding the gun in his lap, Brown saw Flores walking toward him with the knife and shot Flores.  (Tr. Trial vol. 2, at 437-39.)  As Brown tried to get up from his chair, still holding the gun, the gun went off.  (Tr. Trial vol. 2, 439-440).  Unaware that he shot Jackson, Brown walked past Jackson toward the door to leave the apartment. (Tr. Trial vol. 2, 440-42, 445.)  Brown

testified that Jackson, who was seated on the floor, grabbed Brown's leg, so Brown hit Jackson on the head with a glass bottle and went home.  (Tr. Trial vol. 2, 441-42.)  Brown showered, changed clothes, and went to another neighbor's house where he spent time "drinking and talking" with two of his neighbors.  (Tr. Trial vol. 2, 442-43.)  He testified he was afraid to call the police because he did not trust them and he had "just shot somebody."  (Tr. Trial vol. 2, 442.)

At the conclusion of the trial, the jury rejected Brown's claims that he killed Flores in self-defense, that he committed the lesser-included offense of first-degree, heat-of-passion manslaughter, and that he was too intoxicated to form the requisite intent to commit first-degree, malice aforethought murder, and found him guilty as charged in count one.  (O.R. 98-121, 137, ECF No. 7-6.)  As to count two, the jury found Brown guilty of the lesser-included offense of reckless conduct with a firearm.  (O.R. 122-27, 138.)  The jury affixed punishment at life imprisonment (count one) and six months in jail (count two).  (O.R. 137-38.)  The trial court sentenced Brown accordingly, ordered that he serve the sentences concurrently, and gave him credit for time served.  (Tr. Sentencing Hr'g 2-5, ECF No. 7-5.)

Represented by appellate counsel, Brown filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), claiming (1) the trial court erred in failing to remove R.D. from the jury panel after learning he was statutorily disqualified, (2) the trial court erred in failing to instruct the jury on the lesser included offense of second-degree murder by imminently dangerous conduct, (3) the prosecutor committed reversible misconduct during closing argument, (4) trial counsel was ineffective for several reasons, including the failure to challenge R.D. for cause, and (5) the cumulative effect of trial errors deprived Brown of a fair trial.  (Appellant's Br. i, ECF No. 6-1.) The OCCA rejected each claim on the merits and affirmed Brown's judgment and sentence. (*Brown v. State*, No. F-2016-73 (Okla. Crim. App. 2017) (OCCA Op.) 1-5, ECF No. 6-3.)

4

Proceeding *pro se*, Brown filed a combined application for postconviction relief and motion for evidentiary hearing in state district court, asserting that he was denied his Sixth Amendment right to the effective assistance of appellate counsel.[4]  (Appl. 1-11, ECF No. 6-4.) The state district court denied Brown's request for an evidentiary hearing and denied his application for postconviction relief.  (Dist. Ct. Order 4-5, ECF No. 6-5).  Brown filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief (*Brown v. State*, No. PC-2018-499 (Okla. Crim. App. 2018) (OCCA Order) 1-2, ECF No. 6-7.)

In the instant federal habeas petition, Brown seeks relief on five grounds, four of which relate to the statutorily-disqualified juror issue.[5]  Dowling urges the Court to deny the petition.

---

[4] Because Brown filed his application for postconviction relief without the assistance of counsel, the Court liberally construes that application.  *James*, 724 F.3d at 1315.  The application first states the legal standard for evaluating an ineffective-assistance-of-appellate-counsel claim, but then appears to present the first omitted issue as an independent claim.  The Court nonetheless reads Brown's application as asserting an ineffective-assistance-of-appellate-counsel claim and identifying two claims appellate counsel should have raised.  The brief Brown filed in the OCCA to support his postconviction appeal supports this reading of the application.  *See* PC Br. 5, ECF No. 6-6 (stating, "Appellant raised all his claims to the District Court under deficient and ineffective assistance of appellate counsel.").

[5] As he did in state court, Brown requests an evidentiary hearing.  (Reply Br. 4-5, 7, ECF No. 14.)  Having reviewed the case materials, and for reasons further discussed in the analysis section of this opinion and order, the Court concludes that Brown's claims either must be or can be resolved on the basis of the existing record.  *See Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011) (discussing limits on expanding the record on habeas review when federal claims have been adjudicated on the merits in state court); 28 U.S.C. § 2254(e)(2) (requiring certain showings before holding an evidentiary hearing if petitioner "has failed to develop the factual basis of a claim in State court proceedings"); *see also Simpson v. Carpenter*, 912 F.3d 542, 576 (2018) (discussing standard for determining whether petitioner is entitled to an evidentiary hearing in cases when § 2254(d) and § 2254(e)(2) do not apply).  The Court thus denies his request for an evidentiary hearing.

*DISCUSSION*

## I.   Legal standards

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) guides this Court's review of Brown's petition.  Under the AEDPA, a federal court may grant habeas relief to a prisoner in custody pursuant to a state-court judgment "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In other words, a federal court may not grant habeas relief to a state prisoner if the crux of his complaint is that his criminal judgment is subject to collateral attack based on an error of state law.  *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Eizember v. Trammell*, 803 F.3d 1129, 1145 (10th Cir. 2015) ("[T]his court's role on collateral review isn't to second-guess state courts about the application of their own laws but to vindicate federal rights."); *but see Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017) (noting that "[a] prisoner may seek relief . . . if a state law decision is so fundamentally unfair that it implicates federal due process").

Even if a state prisoner timely files a federal habeas petition that presents only properly exhausted federal claims,[6] the AEDPA limits a federal court's ability to grant habeas relief.  Those limits vary depending on how the state court disposed of the federal claims.  If the state court

---

[6] The AEDPA provides that a federal court may not grant habeas relief to a state prisoner "unless the State prisoner has exhausted available state-court remedies," 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).  In addition, a state prisoner ordinarily must file the federal habeas petition within one year of the date on which his convictions became final. 28 U.S.C. § 2244(d)(1)(A). Dowling concedes, and the Court finds, that the petition is timely.  (Resp. 2, ECF No. 6.)  The Court will address Dowling's arguments regarding exhaustion of available state remedies in the analysis section.

adjudicated the merits of a federal claim, a federal court may not grant habeas relief unless the prisoner demonstrates that the state court's adjudication of that claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1),[7] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).  "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  *See also Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (discussing the deferential standard that applies on habeas review of federal claims adjudicated by state courts and stating, "[I]n reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law'" (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*))); *Madison v. Alabama*, 139 S. Ct. 718, 725 (2019) (describing habeas petitioner's "heavy burden" to show that § 2254(d) does not bar relief on claims already adjudicated in state court).  *Richter* illuminates the narrow path to federal habeas relief left open to state prisoners whose federal claims have already been rejected by state courts:  a federal court has "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter*, 562 U.S. at 102.

If the state court denied a federal claim "based on an adequate and independent state

---

[7] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

procedural rule,"[8] without reaching the merits, that claim has been procedurally defaulted for purposes of habeas review.  *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).  In addition, if a state prisoner seeks federal habeas relief on a claim that he or she did not fairly present in state court, that claim is unexhausted, but the federal court may treat that claim as procedurally defaulted. *Grant v. Royal*, 886 F.3d 874, 890-92 (10th Cir. 2018).  As explained in *Grant*, if "the relevant state courts 'would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review.'"  *Id.* at 892 (quoting *Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006)).  A federal court may, however, review a procedurally-defaulted claim if the prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Or, if "the claim may be disposed of in a straightforward fashion on substantive grounds,' [a federal court] retains discretion to bypass the procedural bar and reject the claim on the merits."  *Smith v. Duckworth*, 824 F.3d 1233, 1242 (10th Cir. 2016) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1210-11 (10th Cir. 2002)).

With these standards in mind, the Court turns to Brown's claims.

## II.    Analysis

As previously stated, four of Brown's five grounds for relief allege claims relating to the fact that R.D., a statutorily-disqualified juror, served on the jury for Brown's criminal trial.  The Court first addresses the sole claim that does not relate to this fact, then discussses additional facts

---

[8] A state procedural rule "is independent if it is separate and distinct from federal law," *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998), and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims,'" *id.* at 797 (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

relevant to Brown's juror-related claims before addressing those claims.

### A.    Omission of lesser-included-offense instruction (ground two)

In his second claim for relief, Brown alleges the trial court violated his Fourteenth Amendment right to due process by failing to give an unrequested jury instruction advising the jury that it could consider, as to the charge of first-degree murder, whether Brown was guilty of the lesser-included offense of second-degree murder by imminently dangerous conduct.  (Pet. 7-8, 28-31, ECF No. 1).  Reviewing this claim for plain error on direct appeal, the OCCA denied relief.  (OCCA Op. 2, ECF No. 6-3.)  The OCCA noted that "[l]esser-offense instructions are not warranted unless a rational juror could have acquitted the defendant of the greater offense and convicted him of the lesser."  (OCCA Op. 2.)  In concluding that the trial court did not plainly err in omitting the unrequested instruction, the OCCA reasoned that Brown "told police, and the jury, that he intentionally shot the homicide victim because he was afraid of him," thus, "[n]o rational trier of fact could have concluded that [Brown] merely engaged in 'imminently dangerous conduct,' as required for Depraved Mind Murder."  (OCCA Op. 2-3.)

Brown is not entitled to federal habeas relief on this claim for two reasons.  First, § 2254(d)(1) bars relief because there is no clearly established federal law that requires a lesser-included-offense instruction in a noncapital case.  *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (noting that the "Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases"); *House*, 527 F.3d at 1017 ("[T]he threshold determination that there is no clearly established federal law is analytically dispositive in the § 2254(d)(1) analysis.  That is, without clearly established federal law, a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law.").

Second § 2254(d)(2) bars relief because the OCCA's decision regarding the omitted jury instruction rests on an objectively reasonable determination of the facts. The OCCA neither misstated nor misapprehended the facts in the record when it found that Brown testified he intentionally shot Flores because he feared that Flores was reaching for a knife and intended him harm. Thus, it was objectively reasonable for the OCCA to determine, based on the facts presented in state court, that "[n]o rational trier of fact could have concluded that [Brown] merely engaged in 'imminently dangerous conduct' as required" to support the omitted jury instruction.

For these reasons, the Court denies the petition as to the claim asserted in ground two.

**B.      Juror-related claims (grounds one, three, four and five)**

In grounds one, three and four, respectively, Brown contends the trial court, his attorney, and the prosecutor violated Okla. Stat. tit. 38, § 28(D) and violated Brown rights under various provisions of the federal and state constitutions by permitting R.D., a statutorily-disqualified juror, to serve on his criminal jury. In ground five, Brown contends appellate counsel failed to adequately present or raise these issues on direct appeal.

**1.      Additional facts**

During the trial court's voir dire examination of the jury panel, R.D., identified himself as a "former Tulsa County Detention officer," and "a former Sapulpa Police Dispatcher and Jailer," and stated that he "currently work[s] for the Bixby Police Department as a Dispatcher and Jailer." (Tr. Trial vol. 1, 16, 20, ECF No. 7-1.) Under state law, "[j]ailers or law enforcement officers, municipal, state or federal, shall be eligible to serve [as jurors] on noncriminal actions only." Okla. Stat. tit. 38, § 28(D) (2011).

Later, the trial court asked if any member of the jury panel "had the District Attorney's Office handle any matters" on his or her behalf. (Tr. Trial vol. 1, 15-16, ECF No. 7-1.) R.D.

responded, "I'm a former Detention Officer for Tulsa County.  I've had cases pushed through - -

most of them have been dropped immediately with no further action taken however - - for things

like Assault and Battery on a Detention Officer and cases similar to that."  (Tr. Trial vol. 1, 16.)

And, in response to the trial court's question as to whether R.D. was "a victim" in those cases,

R.D. stated, "In the eyes of the law, yes, ma'am."  (Tr. Trial vol. 1, 16.)  In response to the trial

court's question to the jury panel regarding any current or prior involvement with or employment

by any law enforcement agency or organization, R.D. stated, "I'm a former Tulsa County

Detention Officer.  I'm also a former Sapulpa Police Dispatcher and Jailer, and I currently work

for the Bixby Police Department as a Dispatcher and Jailer."  (Tr. Trial vol. 1, 18, 20.)  R.D. also,

again, identified himself as having been the victim of a crime, but clarified his earlier statement:

> The Assault and Battery on a Detention Officer, but I wanted to clarify something
> on that.  The reason why the cases were dropped in the initial phases was because
> I didn't feel necessarily as if I was a victim based on what had actually occurred.
> It was something that the chain of command had implemented.  And, obviously, if
> there is no victim, there's no crime.  So that's why those were dropped.  So there's
> cases on it, I'm sure, out there, but they didn't go anywhere.

(Tr. Trial vol. 1, 26, 28.)  Finally, R.D. responded to general questions from the trial court by

stating that he was 20 years old, he was married with one child, he worked as a "dispatcher" for

the Bixby Police Department, and that he had never served on a jury.  (Tr. Trial vol. 1, 33, 40-41.)

The prosecutor engaged in conversation with R.D. on a few topics during voir dire, most

unrelated to his employment.  The prosecutor asked all prospective jurors whether they either

possessed or had been raised around guns.  (Tr. Trial vol. 1, 140.)  After one juror suggested that

guns should be locked up and unloaded, R.D. disagreed and the following colloquy occurred:

[R.D.]:          The locked-up thing, I got to kind of deviate from that.

[Prosecutor]:  Okay.

[R.D.]:          It's good to keep them, you know, out of sight/out of mind,
                definitely out of the reach of children and things like that.  But

11

> firearms were designed to be used for an intended purpose, whether that's hunting animals, defending one's self against an attacker, or being used as a weapon of war.
>
> [Prosecutor]:   Sure.  Guns are designed to kill.
>
> [R.D.]:        They obviously have to be loaded in order to be able [to] do that, so . . .
>
> [Prosecutor]:  So if you're going to use them, then you want them available - -
>
> [R.D.]:        Yeah.  If you're not utilizing that firearm, absolutely keep it locked, you know, unloaded and locked away in safe or whatever.  But if it's a firearm that you utilize, then obviously use it safely and maintain your rules.

(Tr. Trial vol. 1, 141-42, ECF No. 7-1.)  R.D. later raised his hand when the prosecutor asked if anyone had thought about going to law school, and made the following statements:

> [R.D.]:        Definitely thought about it, still in the process.
>
> [Prosecutor]:  Because you're involved in kind of - - law enforcement, but not a certified officer, but - -
>
> [R.D.]:        Correct.  You can get a different perspective of things.  You know, you've got different kinds of cops out there.  You've got the ones that are firm, fair, and consistent regardless of the situation, whether it's the - - you know, in this case the defendant, or if it's on the prosecution side, you understand that your job is to enforce the law, not necessarily to make them up or interpret them, so to speak.  But I think if I got more experience within law enforcement, that would actually assist with the - - whether it be a defense or prosecution side as an attorney.
>
> [Prosecutor]:  A law degree would help you a little bit?
>
> [R.D.]:        Yeah.

(Tr. Trial vol. 1, 146-47.)

Brown's attorney spoke briefly with R.D., but not about his employment.  When defense counsel asked the panel whether anyone knew "how long [a] life [sentence] is actually calculated at," R.D. responded, "I believe it's 44 years in Oklahoma."  (Tr. Trial vol. 1, 152.)  Later, defense counsel and R.D. engaged in the following conversation:

| [Counsel]: | Okay. What must the State prove, by what standard, in order for you to find someone guilty?  You have to prove them . . . ? |
|---|---|
| [R.D.]: | Beyond a reasonable doubt. |
| [Counsel]: | Right.  Beyond a reasonable doubt. |
| | Do you - - do you have any idea of how high a standard that is as far as the courts are concerned?  I mean, where would you think - - do you think beyond a reasonable doubt is the same standard applied to civil cases? |
| [R.D.]: | No, typically not. Civil cases don't require beyond a reasonable doubt, to my knowledge.  They require preponderance of the evidence is my understanding. |
| [Counsel]: | You're right. |
| [R.D.]: | So civil cases and criminal cases are definitely very different beasts. |
| [Counsel]: | Sure.  And why is it that you think - - well, first of all, I mean as between beyond a reasonable doubt and preponderance of the evidence, which one is the higher burden? |
| [R.D.]: | Beyond a reasonable doubt. |

(Tr. Trial vol. 1, 164-65.)  Defense counsel later discussed the varying degrees of murder with R.D.  (Tr. Trial vol. 1, 189.)   R.D. described second-degree murder as "[m]urder without premeditation, but with intent," responded, "No" when counsel asked if it carried the same sentencing range as first-degree murder, and explained his thoughts as to why different degree of murder warranted different ranges of sentencing,

> For somebody to go through the process of planning to kill somebody versus somebody coming in, walking in on, you know, their [sic] wife in bed with somebody and killing that somebody, you know, that's just where the ranges come in.  You've got Murder 1, Murder 2, Man 1, Man 2.  You can keep going down because it just depends on what it fits.  And that's definitely above my pay grade and more on their side.

(Tr. Trial vol. 1, 189-90.)  When defense counsel clarified that R.D. was explaining how the sentencing range corresponds to intent, R.D. further stated, "The intent is the same.  It's just - - basically, it's just the level of intent.  You have the intent right then, as [the prosecutor] said, you

13

can form intent in an instant versus forming that intent at the time."  (Tr. Trial vol. 1, 190.)

Neither Brown's attorney nor the prosecutor challenged R.D. for cause and neither used a peremptory strike to remove him from the jury panel.  (Tr. Trial vol. 1, 148-49, 204, 207-09).  As a result, R.D. served on the jury.

### 2.      Trial court's failure to remove R.D. from jury panel (ground one)

In ground one, Brown claims that by failing to remove R.D. from the jury panel, the trial court (1) abused its discretion, and committed a structural error, because Okla. Stat. tit. 38, § 28(D), as interpreted in *State v. Smith*, 320 P.2d 791 (Okla. Crim. App. 1958), mandates disqualification of "jailers" in criminal cases and requires courts to dismiss disqualified prospective jurors absent any request from either party, and (2) violated his right to an impartial jury and due process, as guaranteed by the Sixth and Fourteenth Amendments[9] to the United States Constitution and Article II, §§ 2, 7 and 20 of the Oklahoma Constitution.[10]  (Pet. 4-7, ECF No. 1.)

Brown presented a similar mix of state and federal claims to the OCCA on direct appeal. There, he argued that the trial court abused its discretion and committed structural error when it

---

[9] In his petition and reply brief, Brown makes passing references to a violation of his Fourteenth Amendment right to equal protection of the law.  (Pet. 4, 7, ECF No. 1; Reply Br. 1, 3-4, ECF No. 14).  Dowling argues Brown did not fairly present an equal-protection claim in state court.  (Resp. 7, n.5, ECF No. 6).  The Court declines to consider Dowling's arguments on this point because, even with the benefit of liberal construction, the Court discerns no colorable equal-protection claim in either the petition or the reply brief.  To the extent Brown attempts to assert a Fourteenth Amendment equal-protection claim in ground one, he fails to state a claim on which relief could be granted.

[10] Brown also argues in ground one that the trial court's failure to remove R.D. from the jury panel violated his "due process and equal protection rights" and his right to 12-person jury, as guaranteed by Article II, § 19 of the Oklahoma Constitution. (Pet. 4, 6-7, ECF No. 1.)  But Brown first raised this argument in his application for postconviction relief when he identified it as a claim appellate counsel should have raised on direct appeal. *See supra* n.4.  The Court will therefore address this argument in its analysis of the ineffective-assistance-of-appellate-counsel claim Brown asserts in ground five.

14

failed to strike R.D. for cause under Okla. Stat. tit. 38, § 28(D). (Appellant's Br. 7-8, ECF No. 6-1.) Brown acknowledged that R.D. served on the jury "without objection," but argued that by permitting R.D. to serve on the jury, the trial court "denied [Brown] his state and federal constitutional rights to an impartial jury under Section 20, Article II, of the Oklahoma Constitution and the Sixth Amendment to the United States Constitution applicable to the States through the Fourteenth Amendment," and "his state and federal constitutional due process rights to a fair trial under Section 7, Article II of the Oklahoma Constitution and the Fourteenth Amendment to the United States Constitution." (Appellant's Br. 8.)[11] As factual support for these arguments, Brown asserted that R.D. served as a juror and agreed with the jury's verdict. (Appellant's Br. 8.) As legal support, he quoted a passage from *Rivera v. Illinois*, 556 U.S. 148, 149 (2009), without any explanatory argument, and seemed to suggest that permitting a prospective juror who is removable for cause to serve on the jury violates the Sixth and Fourteenth Amendments. (Appellant's Br. 8.)

The OCCA denied relief, reasoning:

> [Brown] did not ask the trial court to remove the panelist in question, so we review only for "plain error," which requires [Brown] to show an actual deviation from a legal rule, which is plain and obvious, and which affected the outcome of the proceeding. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. That the panelist was statutorily removable for cause, due to his occupation, is not disputed by the State. *See* 38 O.S. 2011, § 28(D). However, relief is not warranted, because there is nothing in the record to support the conclusion that the panelist was in fact prejudiced against [Brown]. The right to challenge any juror for any particular cause is a statutory right that can be waived by failure to claim it. *Boyd v. State*, 1953 OK CR 154, 263 P.2d 202, 205. We find no prejudice, and therefore no plain error here.

---

[11] Article II, § 20 of the Oklahoma Constitution provides, in relevant part, that "[i]n all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury." Article II, § 7 provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

(OCCA Op. 2, ECF No. 6-3.)

For two reasons, the Court finds that Brown is not entitled to federal habeas relief as to the claims asserted in ground one. First, as Dowling contends, many of Brown's arguments allege violations of state law that are not cognizable on habeas review. As a preliminary matter, Brown did not argue on direct appeal that the language of Okla. Stat. tit. 38, § 28(D), as previously interpreted by the OCCA in *Smith*, is mandatory and thus requires a trial court to excuse a disqualified juror absent any objections. The fact that this particular argument was not presented to the OCCA will be explored in the analysis of Brown's ground five ineffective-assistance-of-appellate-counsel claim. But even assuming the OCCA had been given the opportunity to decide on direct appeal whether the relevant statute mandates action by the trial court, this Court would have been bound by the OCCA's interpretation and application of state law. *Hawes v. Pacheco*, 7 F.4th 1252, 1263-64 (10th Cir. 2021). Here, the OCCA noted that it was undisputed that R.D. was removable for cause and a fair reading of the OCCA's decision suggests that the OCCA may have viewed the trial court's inaction as contrary to the statute, and thus erroneous, possibly even plainly and obviously so, but the OCCA found that reversal was not warranted because Brown failed to show resulting prejudice. To the extent Brown argues that the OCCA should not have reviewed his claim for plain error because the alleged violations of his statutory or state constitutional rights resulted in "structural error" and required automatic reversal, that argument presents a question that must be resolved by state courts rather than federal courts. *See Rivera*, 556 U.S. at 161-62 (explaining that when defendants allege "a state-law defect in a tribunal's composition," absent a showing that the defendants' federal constitutional rights were violated, "States retain the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal" or "could rank as a harmless error under state law"). Likewise, to the extent

Brown seeks to relitigate whether the trial court's failure to remove a statutorily disqualified juror, absent objection from either party, violated Brown's rights under any provisions of the Oklahoma Constitution, those too are questions of state law not subject to redetermination by this Court, regardless of whether Brown also alleges violations of his corresponding federal constitutional rights. *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) (noting that a state prisoner's "[a]lternative state claims whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)"). Consequently, any claims asserted in ground one that allege violations of Brown's statutory or state constitutional rights do not provide any basis for granting federal habeas relief.

Second, § 2254(d) bars relief as to the Sixth and Fourteenth Amendment claims Brown presented to the OCCA.[12] As relevant here, the Sixth Amendment guarantees a criminal defendant the right to be tried "by an impartial jury." U.S. Const. amend. VI. And "[b]ecause 'trial by jury in criminal cases is fundamental to the American scheme of justice,' the Due Process Clause of the Fourteenth Amendment guarantees the same right in state criminal prosecutions." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968)). "The examination of prospective jurors during voir dire is intended to expose possible juror biases and is employed to insure that jurors are impartial." *Skaggs v. Otis Elevator Co.*, 164

---

[12] Having read Brown's state appellate brief, the Court finds that § 2254(d) guides review because both federal claims were fairly presented to the OCCA. The Court therefore presumes that the OCCA adjudicated these federal claims on the merits even though the OCCA's decision appears to rest solely on state law. *See Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."); *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

F.3d 511, 515 (10th Cir. 1998). Ordinarily, "a party who is asserting that he did not have the benefit of an impartial jury" must "demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred." *McDonough v. Power Equip. Inc. v. Greenwood*, 464 U.S. 548, 556-57 (1984) (Blackmun, J., concurring).[13] "Not all juror biases, however, adversely affect a litigant's right to a fair trial. To violate due process, the bias must affect the juror's ability to impartially consider the evidence presented at trial." *Skaggs*, 164 F.3d at 515. Whether a juror harbors actual bias is a factual determination entitled to a presumption of correctness on habeas review. *Gonzales*, 99 F.3d at 986; 28 U.S.C. § 2254(e)(1). "Whether implied bias exists in a juror is a legal determination that turns on an objective evaluation of the challenged juror's experiences and their relation to the case being tried." *Gonzales*, 99 F.3d at 987.

Preliminarily, the OCCA's determination that Brown waived his right to challenge R.D. for cause, based on a statutory disqualification, is consistent with, and appears to be derived from, clearly established federal law. *See Queenan v. Oklahoma*, 190 U.S. 548, 551-52 (1902) (discussing a defendant's allegation that constitutional error occurred when he learned, after voir dire but before the jury returned its verdict, that one juror was a convicted felon and thus statutorily disqualified from serving on a jury, noting that the defendant passed on the opportunity to have the trial court remove the juror for cause and begin the trial anew, and holding that "it was [the defendant's] duty to object at the time, if he was going to object at all. He could not speculate on the chances of getting a verdict and then set up that he had not waived his rights"); *Kohl v.*

---

[13] In *McDonough*, the Supreme Court "articulated a two-part test" that applies when "a party challenges the results of a trial on the basis of a juror's alleged untruthfulness in voir dire." *Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996). But that test does not apply here because all parties agree that R.D. honestly answered questions posed to him about his employment as a "jailer." As noted in *Gonzales*, however, *McDonough*'s test "does not provide the exclusive analysis for such cases" and any party alleging juror bias can establish that claim by showing the juror in question was actually or impliedly biased. *Gonzales*, 99 F.3d 985-91.

18

*Lehlback*, 160 U.S. 293, 299-300 (1895) (rejecting habeas petitioner's claims that he was denied due process and equal protection of the law when a statutorily-disqualified juror served on his jury without objection and stating, "[t]he disqualification of alienage is cause of challenge propter defectum, on account of personal objection, and, if voluntarily, or through negligence, or want of knowledge, such objection fails to be insisted on, the conclusion that the judgment is thereby invalidated is wholly inadmissible. The defect is not fundamental as affecting the substantial rights of the accused, and the verdict is not void for want of power to render it."); *see also Carr v. State*, 84 P.2d 42, 46 (Okla. Crim. 1938) ("The rule is well settled that a known ground of disqualification to a juror before or during the progress of the trial, is waived by withholding it, or refusing or declining to raise the objection until after verdict."); *Horton v. State*, 136 P. 177, 181 (Okla. Crim. 1913) ("A defendant must exercise all the rights that he has under the statutes to find out whether or not a juror is qualified before he can take advantage, after verdict, of such juror's incompetency or disqualification.").  Moreover, it was objectively reasonable for the OCCA to apply this waiver rule to the facts of this case because R.D. candidly disclosed his status as a statutorily-disqualified "jailer" during voir dire, and Brown did not challenge R.D. for cause or seek his removal through the use of a peremptory strike and did not raise any claims regarding R.D.'s service on the trial jury until his direct appeal.

The OCCA also correctly identified and reasonably applied clearly established federal law when it reasoned that Brown could not establish constitutional error, under the Sixth Amendment, absent a showing that R.D. was actually or impliedly biased against him.  *Gonzales*, 99 F.3d at 985-86; *Skaggs*, 164 F.3d at 515.  And, on the record presented, *see supra* pp. 10-14, the Court finds nothing objectively unreasonable about the OCCA's conclusion that "there is nothing in the record to support the conclusion that [R.D.] was in fact prejudiced against [Brown]" (OCCA Op.

2, ECF No. 6-3).  Critically, Brown's only allegation of bias appears to be based on the fact that Oklahoma law infers, i.e., implies, that "jailers" will be biased in criminal cases.  Okla. Stat. tit. 38, § 28(D).  But the Supreme Court has never "recognized implied bias without a connection between the juror and a trial participant or involvement in the underlying matter."  *Foltz v. Wyo. Dep't of Corr. Medium Corr. Inst. Warden*, 860 F. App'x 597, 599 (10th Cir. 2021) (unpublished),[14] *cert. denied* 142 S. Ct. 816 (Jan. 10, 2022).  And R.D.'s responses during voir dire revealed no such connection or involvement.  Further, by reviewing Brown's claim under its plain-error standard, the OCCA necessarily analyzed whether the trial court's failure to remove R.D. from the jury panel for cause violated Brown's Fourteenth Amendment right to due process. *See Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (concluding that "Oklahoma's plain-error test is rooted in due process" and stating that when the OCCA applies that test to evaluate an alleged due-process violation, a federal habeas court "must defer to [the OCCA's] ruling unless it 'unreasonably applied' that test" (quoting 28 U.S.C. § 2254(d))); *Cleary v. State*, 942 P.2d 736, 753 (Okla. Crim. App. 1997) ("Error which impinges on the fundamental fairness of trial is plain error.").  Under the facts of this case, Brown has not shown that it was objectively unreasonable for the OCCA to determine that R.D.'s service on the jury, without objection from Brown and without any resulting prejudice, did not violate Brown's right to due process.

Based on the foregoing analysis, the Court denies the petition as to all claims asserted in ground one.

### 3.  Ineffective assistance of trial counsel (ground three)

In his third ground for relief, Brown claims he was denied his Sixth Amendment right to

---

[14] The Court finds this unpublished decision persuasive.  Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

the effective assistance of trial counsel, as interpreted in *Strickland v. Washington*, 466 U.S. 688 (1984), because his attorney failed to seek R.D.'s removal from the jury panel through a challenge for cause or the use of a peremptory challenge. (Pet. 8-10, ECF No. 1.) Brown argues that defense counsel "knew or should have known" that a "jailer" is disqualified under state law from serving on a criminal trial jury. (Pet. 8-9.) He further argues that counsel's deficient performance "allowed [Brown] to be tried by an unauthorized jury of only eleven (11) people which violated [his] due process and equal protection rights under the Oklahoma Constitution, Article II, § 19" and his Fourteenth Amendment rights to due process and a fair trial. (Pet. 9-10.)

Brown presented a somewhat different ineffective-assistance-of-trial-counsel claim to the OCCA on direct appeal. There, Brown alleged that trial counsel performed deficiently and prejudicially by (1) failing to challenge R.D. for cause, (2) failing to request redaction of certain statements Brown made to detectives during his post-arrest interview, (3) failing to request a lesser-included-offense instruction on second degree murder by imminently dangerous conduct, and (4) failing to object to the prosecutor's statements during closing argument regarding the who bears the burden to show that a defendant acted in self-defense. (Appellant Br. 15-17, ECF No. 6-1.) Brown argued that absent these alleged failures on trial counsel's part, the jury would not have found Brown guilty of first-degree murder. (Appellant's Br. 15-17.) The OCCA rejected Brown's Sixth Amendment claim stating,

> [Brown] claims his trial counsel was deficient for not objecting to the errors complained of in Propositions I through III above, and for failing to seek redaction of certain statements from [his] police interview. To prevail on an ineffective-counsel claim, [Brown] must show that trial counsel made professionally unreasonable decisions, and that a different outcome was reasonably likely if counsel had acted otherwise. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Tate v. State*, 2013 OK CR 18, ¶ 38, 313 P.3d 274, 284. Because we found no prejudice in the substantive claims raised in Propositions I through III, [Brown] cannot satisfy *Strickland*'s prejudice requirement for his ineffective-counsel claim. Regarding his fourth and final claim,

21

the statements in question were explained by [Brown] in his trial testimony, and trial counsel used them to support the defense theory that [Brown] killed the homicide victim in a heat of passion.  This was a reasonable trial strategy under the circumstances, and we will not second-guess that choice on appeal.[1]  *Dawkins v. State*, 2011 OK CR 1, ¶ 20, 252 P.3d 214, 220.

> [FN1] When considering a claim of ineffective counsel, we must be highly deferential to choices that are made as a matter of sound trial strategy.  *Dawkins*, 2011 OK CR 1, ¶ 20, 252 P.3d at 220.  Strategic choices include decisions *not* to make objections that might properly be made.  For example, one person on [Brown's] jury was statutorily removable for cause, because he was employed as a municipal jailer.  However, several of the panelist's comments showed him arguably to be favorable to the defense, and no comments suggested prejudice against the defense.  On this record, trial counsel may well have opted to keep the panelist as a matter of trial strategy.

(OCCA Op. 3-4 & n.1, ECF No. 6-3.)

As Dowling contends, § 2254(d) bars relief as to this claim.  Under clearly established federal law, the Sixth Amendment guarantees a criminal defendant "the right to the effective assistance of counsel."  *Strickland*, 466 U.S. at 685-86 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  And the framework for assessing any such claim requires a reviewing court to consider (1) whether counsel performed deficiently and, if so, (2) whether counsel's deficient performance prejudiced the defendant.  *Id.* at 687.  A defendant can demonstrate deficient performance by showing that counsel's alleged acts or omissions were objectively unreasonable "under prevailing professional norms."  *Id.* at 687-88.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

22

Because the OCCA applied *Strickland*, Brown cannot show that the OCCA's adjudication of his Sixth Amendment claim resulted in decision that is contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 (O'Connor, J., concurring in part, concurring in the judgment) ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). And, on the record presented, Brown cannot show that the OCCA's adjudication of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Critically, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105; *see also Harmon v. Sharp*, 936 F.3d 1044, 1057-58 (10th Cir. 2019) (discussing framework for habeas review of ineffective-assistance-of-counsel claims). Here, there is a reasonable argument that Brown's attorney satisfied that standard. As the OCCA stated, *Strickland* requires a reviewing court to view strategic choices made by trial counsel with great deference and to "indulge a strong presumption" that trial counsel's performance "was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 689. Applying these principles, the OCCA found that trial counsel did not perform deficiently by failing to challenge R.D. for cause. This determination is objectively reasonable, both as an application of *Strickland* and as an assessment of the facts presented in state court. As previously discussed, R.D.'s responses during voir dire demonstrated (1) that R.D. had been deemed a "victim" of assault and battery when he worked as a detention officer at the Tulsa County jail, that he did not view himself as a victim, and that he did not believe that charges should have been pursued against his alleged attacker(s), (2) that R.D. understood the distinctions between different degrees of murder, (3) that R.D. believed in having a loaded weapon available for self-

defense, and (4) that R.D. had an interest in pursuing a legal career and hoped working in law enforcement would provide him with a broad perspective of the legal system whether he chose to work in criminal defense or prosecution.  On this record, it was objectively reasonable for the OCCA to conclude that Brown's attorney may have had reasonable strategic reasons for allowing R.D. to serve on the jury despite his statutory disqualification.[15]

The OCCA also concluded that Brown's Sixth Amendment claim failed because Brown could not establish that any of trial counsel's alleged failings—including the failure to seek R.D.'s removal—prejudiced the outcome of Brown's trial.  This conclusion is sound.  Viewing the record as a whole, the Court finds no reasonable probability that, but for trial counsel's failure to seek R.D.'s removal from the jury panel, the result of Brown's trial would have been different.   Brown told detectives and the jury that he shot Flores and Jackson and that he hit Jackson with a glass bottle when Jackson tried to prevent him from leaving the apartment after the shooting.  Brown also told the jury that he shot Flores in self-defense as Flores approached him with a knife.  But the jury rejected that claim, quite possibly because the medical examiner testified that Flores had

---

[15] To support his position that trial counsel performed deficiently, Brown directs this Court's attention to the OCCA's unpublished decision in *Newton v. State*, No. F-2002-1546 (Okla. Crim. App. 2004).  In that case, the OCCA concluded that the appellant's trial counsel performed deficiently by using a peremptory strike to remove a police officer from the jury panel, rather than challenging the officer for cause based on a statutory disqualification, and found that the appellant was prejudiced because there was "strong evidence to suggest a seated juror was unfit to serve and counsel failed to take the necessary steps to ensure the selection of a fair and impartial jury." (Mot. to Amend 11, ECF No. 9.).  Even if *Newton* lends support to Brown's argument that his own counsel performed deficiently, that is only one part of the *Strickland* equation.  And, as discussed next, the OCCA reasonably concluded that Brown could not establish the second part of that equation, resulting prejudice, under the facts of this case.

been shot in the back.[16]   In short, Brown cannot show that the OCCA's rejection of his Sixth Amendment claim for failure to show either deficient performance or prejudice "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Based on the foregoing, the Court denies the petition as to the claim asserted in ground three.

### 4.      Prosecutorial misconduct (ground four)

In ground four, Brown claims the prosecutor committed reversible misconduct, and deprived him of his Fourteenth Amendment right to a fair trial, by failing to ask the trial court to remove R.D. from the jury panel for cause.  (Pet. 10, ECF No. 1.)  Brown argues the prosecutor knew or should have known (1) that R.D. was statutorily disqualified and (2) that permitting R.D. to serve as a juror violated Brown's "due process rights to a 12-person jury as guaranteed by the Oklahoma Constitution, Art[icle] II, § 19."  (Pet. 10.)

Brown first raised this claim in his application for postconviction relief, identifying this particular claim as one of two claims appellate counsel unreasonably failed to assert on direct appeal.  (Appl. 8-9, ECF No. 6-4). Dowling acknowledges as much, but contends this claim is unexhausted and procedurally defaulted because Brown did not raise it as an independent claim either on direct or postconviction appeal.  (Resp. 24-30, ECF No. 6.)  The Court finds it much easier to overlook any procedural default of his claim and deny relief on the merits.  Under clearly established federal law, a general allegation of prosecutorial misconduct warrants federal habeas

---

[16] Brown's argument regarding prejudice appears to allege that trial counsel's error resulted in violations of Brown's rights under the state and federal constitutions.  But the focus of *Strickland* prejudice is whether the alleged errors of counsel had a substantial effect on the outcome of the trial.  466 U.S. at 691-94.

relief only if the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  For the same reasons discussed in the analysis of the claims asserted in grounds one and three, relative to the trial court's and trial counsel's failure to seek R.D.'s removal from the jury panel, Brown also fails to show that the prosecutor's failure to seek R.D.'s removal from the jury panel deprived him of his Fourteenth Amendment rights to due process and a fair trial.

The Court thus denies the petition as to the claim asserted in ground four.

### 5.    Ineffective assistance of appellate counsel (ground five)

In his fifth and final ground for relief, Brown claims he was denied his Sixth Amendment right to the effective assistance of appellate counsel, as interpreted in *Strickland*, because appellate counsel failed to argue on direct appeal that allowing R.D. to serve on his jury violated his right to a 12-person jury, as guaranteed by Article II, § 19 of the Oklahoma Constitution.[17]  (Pet. 11, ECF No. 1.)  He specifically argues that "had appellate counsel cited *State v. Smith* and [this provision of] the Oklahoma Constitution, the outcome of [Brown's] legal proceedings would have been different."  (Pet. 11.)

Brown fairly presented this claim to the OCCA through his postconviction appeal.  As previously discussed, Brown asserted in his application for postconviction relief that appellate counsel performed deficiently and prejudicially by omitting two issues from his direct appeal:

---

[17] Article II, § 19 of the Oklahoma Constitution provides, in relevant part:

The right of trial by jury shall be and remain inviolate, except . . . in criminal cases wherein punishment for the offense charged is by fine only, not exceeding One Thousand Five Hundred Dollars ($1,500.00).  Provided, however, that the Legislature may provide for jury trial in cases involving lesser amounts.  Juries for . . . felony criminal cases shall consist of twelve (12) persons.  All other juries shall consist of six (6) persons.  However, in all cases the parties may agree on a lesser number of jurors than provided herein.

(1) that the trial court violated Brown's right to a 12-person jury, as guaranteed by Article II, § 19 of the Oklahoma Constitution, by seating only 11 jurors who were qualified to sit on a jury in a criminal matter, and (2) that the prosecutor committed reversible misconduct by failing to ask the trial court to remove the disqualified juror, R.D., from the jury panel.  (Appl. 3-10, ECF NO. 6-4.) The state district court construed Brown's application as asserting three propositions and denied relief, stating,

> The Court finds that at the core of each of Petitioner's propositions is the argument that juror [R.D.] was not qualified to be a juror due to his employment as a municipal jailer.  This is the same claim as the Petitioner raised in proposition one of his direct appeal.  This proposition was rejected by the Court of Criminal Appeals, which held that Petitioner had not shown that he was actually prejudiced, and that he had waived his right to challenge this issue for not moving to strike the juror for cause during his voir dire.  As this claim was raised on direct appeal and ruled upon, the Court finds it is barred from further review by the doctrine of res judicata.  The Court of Criminal Appeals has stated that where a claim is procedurally barred, there is no need to address the merits of the issue presented.  Furthermore, because this issue was raised on direct appeal, the Court finds Petitioner's appellate counsel cannot have been ineffective for omitting this issue. Petitioner's proposition should be denied as a matter of law.

(Dist. Ct. Order 4-5 (internal citations omitted), ECF No. 6-5.)

In the brief he filed in support of his postconviction appeal, Brown argued that the state district court erroneously applied *res judicata* because appellate counsel did not raise on direct appeal Brown's claim that allowing R.D. to serve on the jury violated his right, under Article II, § 19, to be tried by a 12-person jury.  (PC Br. 4-5, ECF No. 6-6.)  Brown further argued that the state district court should have adjudicated the merits of his ineffective-assistance-of-appellate-counsel claim by evaluating the merits of the two claims he identified as improperly omitted from his direct appeal. (PC Br. 5-9.)  The OCCA rejected these arguments and affirmed the denial of postconviction relief.  (OCCA Order 1-3, ECF No, 6-7.)  The OCCA stated,

> In this post-conviction appeal, Petitioner again claims that a jailer was improperly seated on his jury.  Petitioner argues that his appellate counsel was ineffective for failing to adequately assert in his direct appeal the issue concerning

27

the alleged disqualified juror.

Petitioner has not established entitlement to any relief in post-conviction proceedings. Post-conviction review provides petitioners with very limited grounds upon which to base a collateral attack on their judgments and sentences. *Logan v. State*, 2013 OK CR 2, ¶ 3, 293 P.3d 969, 973. All issues that were previously raised and ruled upon by this Court in Petitioner's direct appeal or in any other proceeding Petitioner has taken to secure relief are procedurally barred from further review under the doctrine of *res judicata*; and all issues that could have been raised in Petitioner's direct appeal or in any other proceeding Petitioner has taken to secure relief but were not are waived for further review. 22 O.S. 2011, § 1086; *Logan*, *supra*. Such issues may not be the basis for an application for post-conviction relief unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in Petitioner's direct appeal. *Id.*

The issue that a jailer was improperly seated on Petitioner's jury was raised and adequately addressed in his direct appeal. *Brown*, *supra*. Petitioner's appellate counsel was not ineffective with regard to the issue. *Logan*, 2013 OK CR 2 at ¶¶ 5-6, 293 P.3d at 973. Petitioner's issues raised in this post-conviction proceeding are procedurally barred as *res judicata*. 22 O.S. 2011, § 1086; *Logan*, 2013 OK CR 2 at ¶ 3, 293 P.3d at 973.

(OCCA Order 1-3, ECF No. 6-7.)

Dowling argues that § 2254(d) bars relief as to the claim asserted in ground five. (Resp. 30-34, ECF No. 6.) The Court disagrees. Under clearly established federal law, the Sixth Amendment right to the effective assistance of counsel extends to a criminal defendant's first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). A claim that appellate counsel did not provide effective assistance, like an ineffective-assistance-of-trial-counsel claim, is evaluated under *Strickland*'s two-part inquiry. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, a petitioner alleging he was denied effective assistance on appeal must show deficient performance and resulting prejudice. *Robbins*, 528 U.S. at 285-86. To demonstrate deficient performance, the petitioner generally must establish that appellate counsel "unreasonably failed to discover nonfrivolous issues and to file a

merits brief raising them," *id*. at 285, or that the issues appellate counsel raised on appeal were significantly weaker than the issues counsel failed to raise, *Cargle v. Mullin*, 317 F.3d 1196, 1202-03 (10th Cir. 2003).  To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding—in this case the appeal—would have been different."  *Cargle*, 317 F.3d at 1202.  "Thus, in analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, '[courts] look to the merits of the omitted issue,' generally in relation to the other arguments counsel did pursue."  *Cargle*, 317 F.3d at 1202 (internal citations omitted) (quoting *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001).  In *Logan*, the OCCA thoroughly discussed and adopted this framework for assessing ineffective-assistance-of-appellate-counsel claims.  293 P.3d at 973-78.

Here, though, after citing *Logan*, and thus identifying the clearly established federal law governing Brown's claim, the OCCA failed to apply that clearly established federal law in an objectively reasonable manner for two reasons.  First, like the state district court, the OCCA mistakenly invoked *res judicata* by failing to recognize that the two claims Brown identified in his application for postconviction relief had not been raised on direct appeal.  As previously discussed, Brown raised one claim in his application for postconviction relief—a Sixth Amendment ineffective-assistance-of-appellate-counsel claim.  And he alleged appellate counsel performed deficiently by omitting two issues from his direct appeal:  (1) that he was denied his right to a 12-person jury, as guaranteed by Article II, § 19 of the Oklahoma Constitution and (2) that the prosecutor's failure to seek R.D.'s removal from the jury panel violated his Fourteenth

Amendment right to a fair trial.[18]  To the extent the OCCA concluded that *res judicata* barred review of either the Sixth Amendment claim or the two claims appellate counsel omitted from the direct appeal, that conclusion rested on a false premise because none of these three claims was raised or addressed on direct appeal.  (Appellant's Br., generally, ECF No. 6-1.); *see Cone v. Bell*, 556 U.S. 449, 465-67 (2009) (discussing similarly erroneous application of *res judicata* by state appellate court when petitioner "had not presented [postconviction] claim in earlier proceedings, and, consequently, the state courts had not passed on it").  Second, to the extent the OCCA's decision could be construed as adjudicating Brown's Sixth Amendment claim on the merits by concluding that "appellate counsel was not ineffective with regard to the issue" of R.D. serving as a juror on the criminal jury that convicted Brown, the OCCA's failure to actually apply the *Strickland/Logan* analysis to reach that conclusion was either contrary to or, at the very least, based on an unreasonable application of clearly established federal law.  (OCCA Order 3, ECF No. 6-7.); *see Cargle*, 317 F.3d at 1205 ("The very focus of a *Strickland* inquiry regarding performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law."); *Logan*, 293 P.3d at 974 ("In the context of ineffective assistance of appellate counsel claims, only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient (due to failing to raise the omitted issue(s)) and also whether the failure to raise the omitted issue(s) on appeal prejudiced the defendant, *i.e.*, whether

---

[18] This Court recognizes, as the OCCA did in *Logan*, "that non-capital post-conviction applications, which are typically filed *pro se*, can be quite burdensome both to the State and to the district courts" *Logan*, 293 P.3d at 977, and that that burden likely is shared by the OCCA on postconviction appeal.  But that burden does not excuse any court "from considering the merits of legal claims that are asserted within post-conviction claims of ineffective appellate assistance, *i.e.*, of considering whether any of the claims that the post-conviction applicant asserts 'should have been raised' on direct appeal are, in fact, meritorious."  *Logan*, 293 P.3d at 977-78.

there is a reasonable probability that raising the omitted issue(s) would have resulted in a different outcome in the defendant's direct appeal (*e.g.*, a reversal, new trial, new sentencing proceeding, or sentence modification).").

Based on the foregoing, this Court's assessment of Brown's Sixth Amendment claim is governed by *Strickland*'s deferential standard, but without the added layer of deference to the OCCA's decision ordinarily imposed by § 2254(d). *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014). Nevertheless, having independently reviewed the Sixth Amendment claim, the Court finds that Brown is not entitled to federal habeas relief. As just discussed, to succeed on his Sixth Amendment claim Brown must show both (1) that appellate counsel performed deficiently by failing to raise meritorious issues and (2) that, but for counsel's failure to raise those issues, there is a reasonable probability that Brown would have prevailed on appeal. *Robbins*, 528 U.S. at 285-86; *Cargle*, 317 F.3d at 1202-03. This Court has already evaluated the merits of the omitted prosecutorial-misconduct claim that Brown reasserts in ground four of the petition. Because that claim lacks merit, appellate counsel did not perform deficiently by omitting it from Brown's direct appeal.

But the Court agrees with Brown that appellate counsel performed deficiently regarding identification and presentation of Brown's claims related to the failure of the trial court and trial counsel to remove or seek removal of R.D. under Okla. Stat. tit. 38, § 28(D). Highly summarized, appellate counsel made cursory arguments alleging, without analysis, that the trial court abused its discretion by allowing R.D. to serve as a juror despite his statutory disqualification, resulting in violations of Brown's rights under multiple provisions of the state and federal constitutions. Further, the cases appellate counsel cited (without discussion) either were factually dissimilar or provided only weak, if any, support for Brown's arguments. This Court's own research discovered

31

several Oklahoma cases dealing directly with the failure to excuse a juror disqualified under Okla. Stat. tit. 38, § 28, or earlier versions of that statute, or disqualified under other provisions of state law. *See, e.g.*, *Fennell v. State*, 396 P.2d 889 (Okla. Crim. App. 1964) (discussing denial of defendant's for-cause challenge to remove statutorily-disqualified police officer from jury panel); *State v. Smith*, 320 P.2d 719 (Okla. Crim. App. 1958) (affirming decision to quash indictment when statutorily-disqualified deputy sheriff served as grand juror); *Hardesty v. State*, 291 P.2d 351, 366 (Okla. Crim. App. 1955) (discussing defendant's post-verdict claim that juror was disqualified "on account of mental incompetency"); *Carr v. State*, 84 P.2d 42 (Okla. Crim. App. 1938) (concluding defendant was denied constitutional right to impartial jury when a statutorily-disqualified deputy sheriff failed to disclose during voir dire that he was a deputy sheriff and served on trial jury and the facts demonstrated the deputy sheriff was actually biased); *Cooper v. State*, 226 P. 1066, 1067-68 (Okla. Crim. App. 1924) (discussing service by juror who was disqualified based on "alienage").  None of these cases is mentioned in Brown's appellate brief.

As Brown argues, there is some language in the *Smith* decision that appears to support his argument that appellate counsel should have argued on direct appeal that Brown was deprived of a 12-person jury, as guaranteed by the state constitution.  *Smith* was "an appeal on a reserved question of law by the State of Oklahoma to a ruling . . . sustaining the defendant's motion to quash the indictment returned by a grand jury."  320 P.2d at 721.  "The motion to quash was sustained on the proposition that [E.M.], who qualified for grand jury service, was in fact a deputy sheriff of Seminole County on Sheriff Bill Nicholson's staff, and therefore not eligible under the law to serve" under Okla. Stat. tit. 38, § 28 (1951).  *Smith*, 320 P.2d at 721.  When *Smith* was decided, that statute provided, in relevant part, that "[a]ll citizens residing in this State, having the qualifications of electors, of sound mind and discretion, of good moral character, not . . . sheriffs,

or deputy sheriffs, . . . are competent to serve on all grand and petit juries within their counties."

320 P.2d at 722 (quoting Okla. Stat. tit. 38, § 28 (1951)).  After some discussion of whether E.M.

was, in fact, a deputy sheriff, the Criminal Court of Appeals concluded that he was and stated:

> Under the foregoing statute, 38 O.S.1951 § 28, the qualifications for both grand and petit jury service is identical. Cases in Oklahoma and other jurisdictions have held that one bearing the official identity of a deputy sheriff is not qualified for jury service. In *Carr v. State*, 65 Okl. Cr. 201, 84 P.2d 42, 47, this Court held a person who had received a written commission as a deputy sheriff vesting him with all the authorized powers of a deputy, who has taken the oath as such deputy, was in fact such an officer, even though he had not filed a bond, was not salaried, had not been approved by the County Commissioners, and had no authority to serve civil process. Therein, the Court said that an accused was entitled to jurors who were unbiased and qualified and, 'not only of one such juror, nor eleven but twelve of such class.' *Reeson v. State*, 41 Okl. Cr. 297, 272 P. 1033; *Henderson v. State*, 95 Okl. Cr. 342, 246 P. 393.

*Smith*, 320 P.2d at 722-24.  Other language in *Smith* also appears to support Brown's argument

that the language of the statute governing R.D.'s disqualification is "mandatory."  *Smith*, 320 P.2d

at 724.  Under the particular circumstances of this case, the Court agrees with Brown that the

omitted issue regarding the violation of his right to a 12-person jury, as guaranteed by Article II,

§ 19 of the Oklahoma, was relatively stronger than the claims appellate counsel presented on direct

appeal.  And counsel's failure to discuss any of the cases interpreting the relevant statute appears

to be far more deficient than strategic.

All that said, the Court cannot say that, but for appellate counsel's failures to raise the

Article II, § 19, 12-person-jury claim and to adequately present Brown's statutory-disqualification

claim, there is a reasonable probability that the outcome of Brown's direct appeal would have been

any different.  Most, if not all, of the above-cited cases involving the issue of a statutorily-

disqualified juror discuss, or at least mention, the well-established rule in Oklahoma that "[i]t is

the duty of the defendant to question the jurors on their voir dire as to their qualifications, and if

he fails to do so, he waives any objection on that point, even though the disqualification is unknown

to him until after the rendition of the verdict," *Cooper*, 226 P. at 1067; *see also Carr*, 84 P.2d at 47 ("While the rule is definitely settled that where the defendant had knowledge of the disqualification of a juror he is bound to make his objection by way of challenge before the jury is sworn; otherwise he will be deemed to have waived it. This doctrine of waiver is extended to all criminal cases.").  Notably, *Smith*, the case Brown claims appellate counsel should have used to support his appellate arguments, is an outlier on that point.  But the narrow holding of *Smith* is that "the disqualification of a grand juror by reason of his being a deputy sheriff is fundamental and grounds for motion to quash the indictment, especially where the Sheriff is the principal witness against the defendant."  320 P.2d at 726.  And, while other language in *Smith* broadly discusses disqualification of jurors who serve either on grand or petit juries as "identical," and the mandatory nature of statutory provisions regarding juror qualifications, the OCCA in *Smith* had no reason to discuss the waiver rule that bars a post-verdict challenge to a statutorily disqualified juror because the question presented there was whether service by a disqualified grand juror required quashing of the indictment.  *Id.*  Given the clear facts of this case that supported the OCCA's application of the waiver rule in Brown's case for post-verdict challenges to statutorily-disqualified jurors, Brown cannot establish that the requisite prejudice to prevail on his ineffective-assistance-of-appellate-counsel claim.

For that reason, the Court denies the petition as to the claim asserted in ground five.

## CONCLUSION

The Court concludes that Brown has not shown that he is in custody in violation of the Constitution or other federal law.  The Court therefore denies his petition for writ of habeas corpus.  28 U.S.C. § 2254(a).   Further, because the Court finds that  reasonable jurists would not debate this Court's assessment of Brown's constitutional claims, the Court declines to issue a certificate

of appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Brown's request for an evidentiary hearing is **denied**.

2. The petition for writ of habeas corpus (ECF No. 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 22nd day of March 2022.

TERENCE C. KERN
United States District Judge